UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| BRENDEN MARNAE WHITE, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 4:22-cv-00028-JMS-KMB |
| | ) | |
| JEREMY T. MULL, *Prosecuting Attorney* and | ) | |
| ANDREW STEELE, *Deputy Prosecutor*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## ORDER

In several encounters with police, Mark Anthony White ("Mark White") misidentified himself as his brother, Plaintiff Brenden Marnae White ("Brenden White").  As a result, Brenden White was charged in Clark County, Indiana, and subsequently arrested based on Mark White's misidentification.  When the misidentification was confirmed, Brenden White was ultimately released, and the misidentified criminal cases were dismissed.  Brenden White then initiated this litigation against government officials involved in the criminal cases.  Brenden White alleges a federal claim under the Fourth Amendment pursuant to § 1983 and state claims of false imprisonment and malicious prosecution.  After some Defendants settled, only two Defendants remain — Clark County Prosecuting Attorney Jeremy T. Mull and Clark County Deputy Prosecutor Andrew Steele (the "State Defendants").   The State Defendants have moved for summary judgment, [Filing No. 90], and their motion is now ripe for the Court's review.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact, so that as a matter of law, the moving party is

1

entitled to judgment.  *See* Fed. R. Civ. P. 56(a).  On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003).  "Summary judgment is not a time to be coy."  *King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017) (quoting *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017)).  Rather, at the summary judgment stage, "[t]he parties are required to put their evidentiary cards on the table."  *Sommerfield*, 863 F.3d at 649.

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Each fact asserted supporting or opposing a motion for summary judgment must be supported by "a citation to a discovery response, a deposition, an affidavit, or other admissible evidence."  S.D. Ind. L.R. 56-1(e).  Each "citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence."  *Id.*  Only the cited materials must be considered by the Court; the Court need not "scour the record" for potentially relevant evidence.  *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 572-73 (7th Cir. 2017) (quotations omitted); *see also* Fed. R. Civ. P. 56(c)(3); S.D. Ind. L.R. 56-1(h).  Where a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the Court may consider the fact undisputed for purposes of the summary judgment motion.  Fed. R. Civ. P. 56(e)(2).

2

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).  In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts do not affect the outcome.  *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005).  Fact disputes that are irrelevant to the legal question will not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.
### STATEMENT OF FACTS

The following factual background is set forth pursuant to the standard detailed above.  The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made."  *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).[1]

### A.  Brenden White Is Charged in Multiple Criminal Cases

#### 1.    The First Criminal Case — Mark White Claims to be Brenden White

On January 24, 2020, Mark White was arrested in Clark County for residential entry and possessing a syringe.  [Filing No. 94-13 at 1.][2]  Upon arrest, he did not identify himself using his

---

[1] The Court notes that portions of the parties' statements of facts cite only to the Amended Complaint.  [*See, e.g.*, Filing No. 91 at 1 ¶¶ 1-4; Filing No. 95 at 2 ¶ 7.]  Although some of the facts are undisputed background information, the Court cautions counsel to cite to record evidence rather than complaint allegations on a motion for summary judgment.  *See* S.D. Ind. L.R. 56-1(e) ("A party must support each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence.")

[2] The Probable Cause Affidavit now accurately reflects the name of Mark Anthony White.  [Filing No. 94-13 at 1-2.]

name, but instead misidentified himself using the name of his brother, Brenden White.  [Filing No. 94-13 at 2.]  As a result, criminal charges were filed against Brenden White.  [Filing No. 94-13; *State of Indiana v. Brenden Marnae White*, Case No. 10C02-2001-F6-000151 ("the First Criminal Case").]³

After the First Criminal Case was filed, Brenden White learned that he was the one who had been charged as a result of the January 24, 2020 arrest, not his brother.  [Filing No. 94-3 at 3.]  Brenden White was aware that Mark White knew his personally identifying information; Brenden White was told by Mark White that "yes, [Mark White] had warrants" so when Mark White was arrested, he "didn't want to use [Mark White's] name"; he misidentified himself as Brenden White instead.  [Filing No. 94-3 at 2.]  Brenden White then reported to the State Police that "someone used [his] name in a case." [Filing No. 94-3 at 1.]  He did not call the Clark County Prosecutor's Office to report the misidentification.  [Filing No. 94-3 at 1.]

> ### 2.   *The Second Criminal Case — Mark White Claims to be Brenden White*

On February 12, 2020, Mark White was arrested for shoplifting in Clark County.  [Filing No. 94-14 at 3.]  He again identified himself as Brenden White.  [Filing No. 94-14 at 3.]  The arresting officer reviewed Brenden White's prior criminal history, which showed that Brenden White had pled guilty to felony theft in Hendricks County.  [Filing No. 94-14 at 3.]  Brenden White was charged with one count of felony theft and one count of misdemeanor theft.  *State of Indiana v. Brenden Marnae White*, Case No. 10C03-2002-F6-248 ("the Second Criminal Case").  The assigned prosecuting attorney for the Second Criminal Case was Deputy Prosecutor Steele.  [Filing No. 94-4 at 1.]

---

³ The Court is permitted to take judicial notice of public records, such as state court documents. *See, e.g.*, *Spiegel v. Kim*, 952 F.3d 844, 847 (7th Cir. 2020).

On or about March 10, 2020, Brenden White was assigned a public defender, Chief Deputy Public Defender Jennifer Harmeyer. [Filing No. 94-1 at 2.] Chief Deputy Defender Harmeyer was supposedly representing Brenden White, but she discovered that "the person [she] had been interacting with was in fact Mark Anthony White." [Filing No. 94-1 at 2.] Chief Deputy Defender Harmeyer contacted Deputy Prosecutor Steele to explain "that the person holding [himself] out to be [Brenden White] was in fact Mark Anthony White." [Filing No. 94-1 at 2.] After Deputy Prosecutor Steele was notified, he instructed his investigator to investigate the potential misidentification. [Filing No. 90-1 at 1.]

### 3. The First Criminal Case Is Dismissed As Against Brenden White

On March 12, 2020, Deputy Prosecutor Steele's investigator told the arresting officer in the First Criminal Case that "Brenden White is the brother of Mark Anthony White." [Filing No. 94-13 at 2.] The Probable Cause Affidavit was updated to say that the First Criminal Case against Brenden White was "due to Mark [White] giving officers all of Brenden [White's] information. The person on the scene . . . was actually Mark Anthony White." [Filing No. 94-13 at 2.] Consequently, the First Criminal Case was dismissed as to Brenden White, and the case was refiled against Mark White. [Filing No. 94-12 at 1; Filing No. 94-13 at 2.]

### 4. The Third Criminal Case — Mark White Claims to be Brenden White

On April 2, 2020, because Mark White again identified himself as Brenden White, Brenden White was charged with one count of misdemeanor criminal trespass and one count of misdemeanor unauthorized motor vehicle entry in Clark County. [Filing No. 94-7 at 1; *State of Indiana v. Brenden Marnae White*, Case No. 10C03-2004-CM-000472 ("the Third Criminal Case").] The assigned prosecuting attorney for the Third Criminal Case was again Deputy Prosecutor Steele. [Filing No. 94-7 at 1.]

Brenden White learned that he had been charged in the Second Criminal Case and the Third Criminal Case because he "just kept checking MyCase." [Filing No. 94-3 at 3.] Although Brenden White knew about these pending cases, because he "just looked at the charge, . . . and it wasn't [him]," he did not know that an Initial Hearing was scheduled. [Filing No. 94-3 at 9.]

5. *The Fourth Criminal Case — Accurately Charged Against Brenden White*

On June 1, 2020, Brenden White was charged in Hendricks County for several offenses including unlawfully possessing a syringe. *State of Indiana v. Brenden White*, Case No. 32D05-2006-F6-000434 ("the Fourth Criminal Case"). The same day, the Hendricks County Prosecuting Attorney notified Deputy Prosecutor Steele of the Fourth Criminal Case. [Filing No. 90-1 at 1.] Unlike the first three criminal cases, Brenden White does not dispute that these charges were accurately filed against him.

6. *Deputy Prosecutor Steele and Chief Deputy Defender Harmeyer Communicate Regarding the Misidentification Issue*

On July 7, 2020, Chief Deputy Defender Harmeyer contacted Deputy Prosecutor Steele to note that the First Criminal Case against Brenden White had been dismissed and refiled against Mark White. [Filing No. 94-1 at 2-3.] She stated in an email, "If you agree that these cases should be proceeding against Mark White, please let me know when you file the new cases so I can have Mark [White] appear in court for his Initial Hearings." [Filing No. 94-1 at 2-3.] Chief Deputy Defender Harmeyer did not receive a response to her email from Deputy Prosecutor Steele. [Filing No. 94-1 at 2-3.]

On August 14, 2020, the Initial Hearing for the Third Criminal Case was continued. [Filing No. 90-1 at 2.] Deputy Prosecutor Steele did not object to this continuance because he was "trying to gather identifying information on [Brenden White] and Mark White." [Filing No. 90-1 at 2.] That same day, Chief Deputy Defender Harmeyer sent another email to Deputy Prosecutor Steele

6

stating, "Let me know when you refile on Mark White and I'll get Mark [White] to appear for his Initial Hearings." [Filing No. 94-1 at 3.]  She informed Deputy Prosecutor Steele that an Initial Hearing in the Third Criminal Case was set for September 18, 2020. [Filing No. 94-1 at 3.]

On September 18, 2020, Deputy Prosecutor Steele requested a continuance of the Initial Hearing for the Third Criminal Case. [Filing No. 90-1 at 1-2.]  He did so in order to "continue trying to verify the defendant's identity and inform" Chief Deputy Defender Harmeyer. [Filing No. 90-1 at 1-2.] Deputy Prosecutor Steele "informed the Court at the time that there was an issue with the defendant's identity and that [he] was trying to verify the information provided by [Chief Deputy Defender Harmeyer]." [Filing No. 90-1 at 1-2.]  The Initial Hearing date was reset to October 2, 2020. [Filing No. 94-7 at 3.]

> 7.      *The Fifth Criminal Case — Accurately Charged Against Brenden White*

On October 2, 2020, Brenden White was charged in Hendricks County with several offenses including the unlawful possession of a syringe and was held in jail in Hendricks County. *State of Indiana v. Brenden White*, Case No. 32D05-2010-F6-000835 ("the Fifth Criminal Case"). Brenden White acknowledges that he was accurately named in the Fifth Criminal Case. [Filing No. 94-3 at 4.]

Sometime that same day, Deputy Prosecutor Steele received a notice about the Fifth Criminal Case from the Hendricks County Prosecuting Attorney. [Filing No. 90-1 at 1.] Also that day, Chief Deputy Defender Harmeyer sent a follow-up email about the Second Criminal Case to Deputy Prosecutor Steele, stating "These dates are coming around again? Just wanted to give you a heads up so you can file charges against the correct person." [Filing No. 94-1 at 3.]

**B.  Brenden White Is Arrested for Failure to Appear**

The Initial Hearing for the Third Criminal Case in occurred on October 2, 2020 in Clark County, while Brenden White was in custody for the Fifth Criminal Case.  [*State of Indiana v. Brenden White*, Case No. 32D05-2010-F6-000835; Filing No. 94-3 at 4; Filing No. 94-7 at 3.] Because Brenden White did not attend the Initial Hearing for the Third Criminal Case, an arrest warrant was issued for his failure to appear.  [Filing No. 94-7 at 3.]  The arrest warrant was not requested by Deputy Prosecutor Steele, nor was Deputy Prosecutor Steele present at the hearing. [Filing No. 90-1 at 2.]  A different deputy prosecutor, not named in this lawsuit, represented the State at the Initial Hearing.  [Filing No. 94-7 at 3.]

On October 23, 2020, when Brenden White was about to be released for the Fifth Criminal Case, he discovered he had a hold.  [Filing No. 94-3 at 4.]  He was served with a warrant for his arrest for failing to appear at the Initial Hearing for the Third Criminal Case.  [Filing No. 94-3 at 4; Filing No. 94-7 at 3-4.]  He was then transferred to Clark County.  [Filing No. 94-3 at 4.]

On October 26, 2020, the Initial Hearing for the Third Criminal Case was held, which was attended by both Brenden White and Deputy Prosecutor Steele.  [Filing No. 94-7 at 4.]  Deputy Prosecutor Steele agreed to release Brenden White on his own recognizance.  [Filing No. 90-1 at 3.] Deputy Prosecutor Steele informed the Court that he was attempting to verify Brenden White's identity for the Second Criminal Case, and he "requested new dates on all cases so that [he] could confirm."  [Filing No. 90-1 at 3.]

**C.  The Clark County Prosecutor's Office Moves to Dismiss the Second and Third Criminal Cases**

On October 27, 2020, Chief Deputy Defender Harmeyer was appointed to represent Brenden White in the Third Criminal Case.  [Filing No. 94-1 at 4.]  The same day, Chief Deputy Defender Harmeyer "walked over to the Clark County Jail and asked the staff" for copies of the

booking photos of "Brenden White" from the First Criminal Case and the Third Criminal Case. [Filing No. 94-1 at 4.]  She received the photos and emailed them to Deputy Prosecutor Steele for him "to compare the mugshots of the individual booked into the Clark County Jail as Brenden Marnae White on January 24, 2020, versus the individual booked into the Clark County Jail as Brenden Marnae White on October 23, 2020." [Filing No. 94-1 at 4.]

On December 11, 2020, Deputy Prosecutor Steele was notified by his investigator that the investigator "had obtained booking photographs . . . from the Hendricks County Jail and the Clark County Jail, as well as the BMV information for Brenden White and Mark White.  [Deputy Prosecutor Steele] then reviewed the photographs and determined that Mark White had used Brenden White's identity during the commission of the crime" alleged in the Second Criminal Case.  [Filing No. 90-1 at 3.]  Deputy Prosecutor Steele states that "[t]his was the first time [he] had confirmation of this fact." [Filing No. 90-1 at 3.]  The Probable Cause Affidavit for the Second Criminal Case was then updated to reflect that confirmation, and the same day, Deputy Prosecutor Steele filed a motion to dismiss the Second Criminal Case.  [Filing No. 94-14 at 2; Filing No. 94-4 at 4.]  Also on December 11, 2020, Deputy Prosecutor Steele requested that his investigator contact the police officers from the Third Criminal Case "to tender updated Probable Cause

Affidavits in light of the identification of Mark White as the perpetrator." [Filing No. 90-1 at 3.][4]

Three days later, on December 14, 2020, the Second Criminal Case was dismissed. [Filing No. 94-4 at 4.]

On January 12, 2021, having waited thirty days without receiving updated Probable Cause Affidavits from the police, Deputy Prosecutor Steele moved to dismiss the Third Criminal Case. [Filing No. 90-1 at 3; Filing No. 94-8 at 1.] The next day, January 13, 2021, the Third Criminal Case was dismissed. [Filing No. 94-9 at 1.]

### D. The Clark County Prosecutor's Dismissal Policy

Before becoming a public defender, Chief Deputy Defender Harmeyer was a Deputy Prosecuting Attorney for the Clark County Prosecutor's Office. [Filing No. 94-1 at 1.] According to Chief Deputy Defender Harmeyer, when Prosecutor Mull was elected, he tightened the policy regarding dismissing cases. [Filing No. 94-1 at 1.] He "held an officewide meeting where he announced" that deputy prosecutors would "no longer retain[] independent authority to dismiss cases," but instead would have to seek approval from either Prosecutor Mull or another individual,

---

[4] In Brenden White's Statement of Material Facts Not in Dispute, he alleges that Deputy Prosecutor Steele did not move to dismiss the Second Criminal Case until a day or two after receiving a Notice of Tort Claim. [Filing No. 95 at 3-4.] However, that fact is not supported by Brenden White's cited evidence. He cites to Chief Deputy Defender Harmeyer's Declaration, in which she states "[Deputy Prosecutor] Steele finally filed a Motion to Dismiss" the Second Criminal Case on December 11, 2020. [Filing No. 94-1 at 4.] He also cites to the Chronological Case Summary for the Second Criminal Case, showing the date the Motion to Dismiss was filed. [Filing No. 94-4 at 4.] Further, he cites to Deputy Prosecutor Steele's Motion to Dismiss the Second Criminal Case, which stated, "The State of Indiana has confirmed that the defendant's identity was used by another person in the commission of this crime and the State of Indiana intends to file charges against that perpetrator." [Filing No. 94-5 at 1.] And he cites to the Order dismissing the Second Criminal Case which was issued days after Deputy Prosecutor Steele's Motion to Dismiss. [Filing No. 94-6 at 1.] The allegations in his Amended Complaint – to which he also cites – are not evidence. None of these sources show when Brenden White provided his Notice of Tort Claim or when it was received by the State Defendants.

Tim Gray. [Filing No. 94-1 at 7.] During her time as a public defender, Chief Deputy Defender Harmeyer has been told by many deputy prosecutors that "they cannot dismiss a case" without approval from Prosecutor Mull. [Filing No. 94-1 at 2.]

Evan Ray is a former Deputy Prosecuting Attorney for the Clark County Prosecutor's Office and according to him, "at the Clark County Prosecutor's Office, Deputy Prosecutors did not have independent authority to dismiss cases." [Filing No. 94-2 at 1.] Instead, "[a]ll Deputy Prosecutors were required to get supervisor approval from" Mr. Gray or Prosecutor Mull. [Filing No. 94-2 at 1.] Prosecutor Mull created "an atmosphere of reluctance to dismiss cases" because of his perceived "'tough on crime'" attitude. [Filing No. 94-2 at 1.] "[A]s a matter of policy," former Deputy Prosecutor Ray states, deputy prosecutors were required to charge a case within 24 hours of receiving a Probable Cause Affidavit. [Filing No. 94-2 at 2.] While deputy prosecutors had no independent authority to dismiss, they had "complete discretion" to charge. [Filing No. 94-2 at 2.] Further, deputy prosecutors were provided with "little to no training" in "charging decisions," "due diligence," and "appropriate post charging investigation." [Filing No. 94-2 at 2.] Consequently, former Deputy Prosecutor Ray alleges, deputy prosecutors would be reluctant to dismiss cases even in "instances where it was readily apparent that a case should be dismissed due to lack of probable cause." [Filing No. 94-2 at 1.]

As to how the above described policy was applied in the White case(s), Deputy Prosecutor Steele states that he discussed the cases with Prosecutor Mull, who gave him discretion regarding whether to dismiss the cases against Brenden White that should have been brought against Mark White. [Filing No. 90-1 at 3-4.] Sometime after July 7, 2020 (after he received notice of the First and Second Criminal Cases from Chief Deputy Defender Harmeyer), Deputy Prosecutor Steele notified Prosecutor Mull about Brenden White's criminal cases; he informed Prosecutor Mull that

the First Criminal Case had been dismissed, and that there were "two cases regarding Brenden White wherein the identity of the defendant was possibly used by another person to commit the alleged offenses." [Filing No. 90-1 at 3-4.]  He informed Prosecutor Mull that the Second and Third Criminal cases consisted of "different offenses, committed on different dates." [Filing No. 90-1 at 4.]  He advised Prosecutor Mull that he asked his investigator to "assist in gathering any booking photographs for Brenden White and Mark White for comparison." [Filing No. 90-1 at 4.]  Prosecutor Mull "requested that [Deputy Prosecutor Steele] keep him posted on any developments and [to] do what [Deputy Prosecutor Steele] believed best in prosecuting the case." [Filing No. 90-1 at 4.]  Deputy Prosecutor Steele states that "[a]t no point did Prosecutor Mull instruct or encourage [him] to continue prosecuting the case despite a lack of probable cause.  Instead, it has always been Prosecutor Mull's expectation that cases [are] not [to] be prosecuted unless the charges are supported by the evidence." [Filing No. 90-1 at 4.]

### E.  This Lawsuit

Brenden White filed his Complaint on February 10, 2022, in the Clark County Superior Court.  [Filing No. 1-2.]  On March 12, 2022, the State Defendants removed Brenden White's Complaint to this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.  [Filing No. 1.]  Brenden White filed the operative Amended Complaint on May 3, 2022.  [Filing No. 32.]  After the Court's ruling on a Motion to Dismiss filed by the State Defendants, Brenden White pursued claims for violation of the Fourth Amendment under Section 1983, malicious prosecution, and false imprisonment.  [Filing No. 53 at 22.]  On all those claims, the State Defendants have moved for summary judgment.  [Filing No. 90.]

12

## III.
### DISCUSSION

**A.  Federal Claims**

The State Defendants argue that Brenden White's federal claim fails because they are entitled to both prosecutorial and/or qualified immunity.  The Court addresses each issue in turn.

    *1.*    *Prosecutorial Immunity*

The State Defendants argue that "the United States Supreme Court has held prosecutors are absolutely immune from actions taken within the scope of their prosecutorial duties." [Filing No. 91 at 4-5.] The absence of prosecutorial immunity, the State Defendants argue, would "prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." [Filing No. 91 at 5 (quotation and citation omitted).] Specifically, the State Defendants argue that they acted within their prosecutorial roles throughout Brenden White's criminal cases. [Filing No. 91 at 6.] They note that when Deputy Prosecutor Steele learned of the potential misidentification, he instructed an investigator to learn more about the issue; he agreed to continue Brenden White's initial hearings for the sake of that investigation; and after reviewing booking photographs concerning the misidentification, he moved to dismiss the Second Criminal Case and the Third Criminal Case. [Filing No. 91 at 6.] These actions, the State Defendants argue, entitle them to absolute immunity because of their role as advocates. [Filing No. 91 at 6.]

In response, Brenden White argues that because the State Defendants were acting as investigators or carrying out administrative functions, they are not entitled to absolute immunity. [Filing No. 95 at 5-7.] Specifically, Brenden White argues that Deputy Prosecutor Steele admits in his Declaration that he performed his role of an investigator in evaluating the misidentification. [Filing No. 95 at 6.] Brenden White further argues that the State Defendants "abandoned their role

13

as advocates for the State" and acted in an administrative role "when they continued with the prosecution of [Brenden White] after notification that [Brenden White] had been wrongly charged." [Filing No. 95 at 7-8.]

In reply, the State Defendants argue that "[t]he decision of whether to dismiss or continue to prosecute a case is inevitably a prosecutorial function, and [the State] Defendants are therefore entitled to absolute immunity." [Filing No. 96 at 1.]

As the Seventh Circuit has instructed, "Prosecutors are absolutely immune from liability for damages under § 1983 for conduct that is functionally prosecutorial; this immunity is understood to broadly cover all conduct associated with the judicial phase of the criminal process." *Bianchi v. McQueen*, 818 F.3d 309, 316 (7th Cir. 2016) (citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 341-43 (2009); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)). "Whether or not an action falls within the scope of his prosecutorial duties depends upon its function. . . . The analysis hinges on whether the prosecutor is, at the time, acting as an officer of the court, as well as on his action's relatedness to the judicial phase of the criminal process." *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012) (citing *Van de Kamp*, 555 U.S. at 342-43; *Imbler*, 424 U.S. at 430, 431 n.33.) On one hand, when a prosecutor "search[es] for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested," he is "perform[ing] the investigative functions normally performed by a detective or police officer" and is not entitled to prosecutorial immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). On the other hand, when a prosecutor "professional[ly] evaluat[es] the evidence assembled by the police," in "preparing for the initiation of judicial proceedings," he acts as an advocate, entitled to prosecutorial immunity. *Id.*

14

To evaluate whether the State Defendants are entitled to absolute immunity, the Court focuses on the "function" of the State Defendants' conduct which allegedly caused Brenden White's injury.  Brenden White argues that he was arrested because Deputy Prosecutor Steele failed to notify the other deputy prosecutor covering the Initial Hearing that Brenden White was potentially misidentified.  [Filing No. 95 at 6.]  But that kind of prosecutorial conduct is entitled to absolute immunity.  *See Van de Kamp*, 555 U.S. at 345 (In hypothetical suit "seeking damages not only from the trial prosecutor but also . . .  from the trial prosecutor's colleagues—all on the ground that they should have found and turned over the impeachment material . . . ., all these prosecutors would enjoy absolute immunity.").

Brenden White argues that he was arrested because Deputy Prosecutor Steele failed to take "corrective action to inform the Clark Circuit Court No. 3" that Brenden White was potentially misidentified.  [Filing No. 95 at 6.]  But appearing before a judge to request a warrant, and conversely not appearing before a judge to request a continuance, is "conduct associated with the judicial phase of the criminal process."  *Bianchi*, 818 F.3d at 316 (citations omitted).  Brenden White argues he was injured because the State Defendants did not promptly dismiss the charges against him.  But in Indiana, a prosecutor is "vested . . . with the discretion to dismiss pending charges."  *Holvoet v. State*, 689 N.E.2d 469, 472 (Ind. Ct. App. 1997); *see also* Ind. Code § 35-34-1-13(a) ("Upon motion of the prosecuting attorney, the court shall order the dismissal of the indictment or information.")  Prosecutor Mull, as a supervisory prosecutor, is similarly immune.  *See Van de Kamp*, 555 U.S. at 346 ("[S]upervisory prosecutors are immune in a suit directly attacking their actions related to an individual trial.").

Even if the conduct causing injury was Deputy Prosecutor Steele's "investigation" into the potential misidentification, he would still be entitled to prosecutorial immunity.  In his undisputed

Declaration, Deputy Prosecutor Steele states that he "instructed" his investigator "to investigate the matter." [Filing No. 90-1 at 1.] And his investigator later "notified [him] that [the investigator] had obtained booking photographs." [Filing No. 90-1 at 3.] Upon receiving those booking photographs, Deputy Prosecutor Steele's "investigation" was simply his evaluation of the evidence in preparation for a judicial proceeding, whether that proceeding was preparing for trial or dismissing Brenden White's cases. These actions are within the scope of a prosecutor's functions, for which the State Defendants are entitled to prosecutorial immunity. *See Anderson v. Simon,* 217 F.3d 472, 475-76 (7th Cir. 2000) (absolute immunity where prosecutor "reviewed and weighed the evidence," and "determined that additional evidence was necessary to support a . . . charge"); *Spiegel v. Rabinovitz,* 121 F.3d 251, 257 (7th Cir. 1997) (absolute immunity where "the police conducted an investigation and wrote up reports" and the prosecutor "merely reviewed these documents and interviewed the parties in order to evaluate the value of the cases involved").

Additionally, Prosecutor Mull enjoys prosecutorial immunity for an alleged policy of failing to train deputy prosecutors on case evaluation or not providing deputy prosecutors with discretion to dismiss cases. *See Van de Kamp,* 555 U.S. at 346-47 (holding that supervisory prosecutors are entitled to prosecutorial immunity for supervision and training regarding prosecutorial decisions).[5]

---

[5] Additionally, § 1983 imposes liability on "persons" who act under color of state law and violate the federal rights of another. 42 U.S.C. § 1983. Although the parties do not address this issue, the Court notes that, in any event, the State Defendants are not "persons" for purposes of § 1983 and so may not be held liable for § 1983 damages claims against them in their official capacities. *Jones v. Cummings,* 998 F.3d 782, 786 (7th Cir. 2021) (Madison County, Indiana Prosecutor was state official); *Wynn v. Southward,* 251 F.3d 588, 592 (7th Cir. 2011) (state officials are not "persons" under § 1983 for claims against them in their official capacities).

The State Defendants' Motion for Summary Judgment is **GRANTED** to the extent the Court finds that Brenden White's § 1983 claims fail because the State Defendants are entitled to prosecutorial immunity.

### 2.     Qualified Immunity

Although absolute immunity bars Brenden White's federal claims, to be thorough, the Court will address the State Defendants' asserted defense of qualitied immunity.  The State Defendants argue that they are entitled to qualified immunity because they violated no clearly established law.  [Filing No. 91 at 7.]  The State Defendants argue that Brenden White "cannot establish a Fourth Amendment violation" because "the record shows that [the State] Defendants did not institute any suit against [Brenden White] without probable cause and did not act maliciously in instituting any suit."  [Filing No. 91 at 8-9.]  Deputy Prosecutor Steele "agreed to various continuances while his investigator was investigating the possible misidentification issue"; "never requested the issuance of an arrest warrant" in the Third Criminal Case; and "did not learn about the arrest warrant until after it was served."  [Filing No. 91 at 8.]  Deputy Prosecutor Steele "agreed to release [Brenden White] on his own recognizance and requested new dates on [Brenden White's] cases so that [Deputy Prosecutor Steele] could continue to investigate the issue regarding the alleged misidentification."  [Filing No. 91 at 8.]  "Once [Deputy Prosecutor Steele] received confirmation of the misidentification on December 11, 2020, he promptly" moved to dismiss the charges against Brenden White.  [Filing No. 91 at 8.]  As to Prosecutor Mull, the State Defendants argue that Prosecutor Mull cannot be held liable under Section 1983 because he was not "personally involved in any alleged constitutional violation."  [Filing No. 91 at 9.]  The State Defendants argue that "[a]t no point did [Prosecutor] Mull instruct or encourage [Deputy Prosecutor] Steele to prosecute any case against [Brenden White] despite not having probable

cause." [Filing No. 91 at 9.]  Further, they argue that "it has always been [Prosecutor Mull's] expectation that cases will not be prosecuted unless they are supported by the evidence." [Filing No. 91 at 9-10.]

Brenden White responds that the State Defendants are not entitled to qualified immunity because they violated his clearly established Fourth Amendment right to be free from malicious prosecution and false imprisonment. [Filing No. 95 at 9-12.]  The State Defendants "were aware that Mark Anthony White was posing a[s] [Brenden White] in interactions with the Jeffersonville Police Department"; "had ample opportunity to correct the error from the time they became aware of the misidentification"; and should have "easily dispatched" "[t]he matter of [Brenden White's] misidentification." [Filing No. 95 at 10-12.]  Instead, the State Defendants "filed charges against [Brenden White]," "did not take immediate action to correct the misidentification," and "continued their prosecution of him" instead of promptly dismissing the charges. [Filing No. 95 at 10-12.]  As to Prosecutor Mull, Brenden White argues that "the policies promulgated by [Prosecutor] Mull ultimately were a significant contributing factor to the continued prosecution" of Brenden White. [Filing No. 95 at 16.]  Prosecutor Mull permitted no independent authority to dismiss cases, and deputy prosecutors "were reluctant to seek approval for dismissal even when appropriate." [Filing No. 95 at 14; Filing No. 94-2 at 2.]  Consequently, Brenden White argues, "it was the policies instituted by [Prosecutor] Mull that directly resulted in Brenden White's prosecution" in the Second and Third Criminal Cases. [Filing No. 95 at 14.]  Brenden White argues that when Prosecutor Mull "was made aware of the issues surrounding" the misidentification, Prosecutor Mull "approved the conduct of [Deputy Prosecutor] Steele" and "turned a blind eye" to the matter until Brenden White notified Prosecutor Mull of his "plan to seek legal recourse." [Filing No. 95 at 16.]

18

The State Defendants reply that no analogous case clearly establishes "that a prosecutor is required to believe without independent verification that the fact a person used a defendant's identity in one instance means the same misidentification occurred for every case or offense in which the defendant is involved." [Filing No. 96 at 2.] The State Defendants further argue it is not clearly established "that a prosecutor is required to accept a criminal defense attorney's statements or evidence regarding a case without conducting his or her own independent investigation." [Filing No. 96 at 2.] Deputy Prosecutor Steele "instructed his investigator to examine" "a possible misidentification," and "once the prosecutor's office confirmed that a misidentification had in fact occurred," he "promptly dismissed the charges." [Filing No. 96 at 2-3.] As to Prosecutor Mull, they argue that, although Brenden White "alleges that deputy prosecutors generally felt discouraged from dismissing cases," he "cannot show that [Prosecutor] Mull encouraged or approved the wrongful prosecution of any case against him." [Filing No. 96 at 3.] Instead, the State Defendants argue, "the record demonstrates that [Prosecutor] Mull never encouraged [Deputy Prosecutor] Steele to continue prosecuting any case against [Brenden White] despite a misidentification." [Filing No. 96 at 3 (citing Filing No. 90-1 at 3-4.)] Consequently, the State Defendants argue, Brenden White has failed to "show that [the State] Defendants are not entitled to qualified immunity." [Filing No. 96 at 2.]

"A state official is protected by qualified immunity unless the plaintiff shows: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (internal quotations and citations omitted). "'If either inquiry is answered in the negative, the defendant official' is protected by qualified immunity." *Id.* (emphasis omitted) (quoting *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017)). The Court may decide these issues in either order. *See Pearson*

*v. Callahan*, 555 U.S. 223, 236 (2009).   Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Once the defense of qualified immunity is raised, 'it becomes the plaintiff's burden to defeat it.'" *Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012) (quoting *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008)).

To determine whether a right is clearly established, the Court looks to controlling precedent from both the Supreme Court of the United States and the Seventh Circuit Court of Appeals, and if there is no such precedent it "cast[s] a wider net" and examines "all relevant case law to determine whether there was such a clear trend in the case law that [it] can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 731 (7th Cir. 2013) (quotations and citations omitted).   As set forth by the Supreme Court, "a court must ask whether it would have been clear to a reasonable [official] that the alleged conduct 'was unlawful in the situation he confronted.'   If so, then the defendant [official] must have been either incompetent or else a knowing violator of the law, and thus not entitled to qualified immunity.   If not, however – *i.e.*, if a reasonable [official] might not have known for certain that the conduct was unlawful – then the officer is immune from liability." *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1867 (2017) (citation omitted).   A plaintiff "can demonstrate that the right was clearly established by presenting a closely analogous case that establishes that the Defendants' conduct was unconstitutional or by presenting evidence that the Defendant's conduct was so patently violative of the constitutional right that reasonable officials would know without guidance from a court." *Estate of Escobedo v. Bender*, 600 F.3d 770, 780 (7th Cir. 2010) (citations omitted).

The Supreme Court has clarified that a claim for false imprisonment and a claim for

malicious prosecution are both the same under the Fourth Amendment.  *Thompson v. Clark*, 142

S. Ct. 1332, 1337 (2022).  Such a claim consists of the following elements:

> (i)     the suit or proceeding was instituted without any probable cause;
> (ii)    the motive in instituting the suit was malicious, which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and
> (iii)   the prosecution terminated in the acquittal or discharge of the accused.

*Id.* at 1338 (2022) (internal quotations omitted).  Because this claim is grounded in the Fourth

Amendment, Brenden White must also "prove that the malicious prosecution resulted in a seizure."

*Id.* at 1337 n.2 (citing *Manuel v. Joliet*, 580 U.S. 357, 365-66 (2017)).

The Court will proceed to the second prong of the qualified immunity inquiry and will

analyze whether the Fourth Amendment right claimed by Brenden White was clearly established

regarding the conduct of each State Defendant.

### a.   Deputy Prosecutor Steele

Deputy Prosecutor Steele's conduct did not violate a clearly established law.  When Deputy

Prosecutor Steele learned of the potential misidentification, he did not seek a warrant for Brenden

White's arrest; rather, he requested a continuance of Brenden White's Initial Hearing.  [Filing No.

90-1 at 1-2.]  Deputy Prosecutor Steele did not attend the later Initial Hearing; Deputy Prosecutor

Steele did not request the warrant; Deputy Prosecutor Steele did not even learn about the issuance

of the warrant until after it was served.  [Filing No. 90-1 at 2.]  Deputy Prosecutor Steele agreed

to release Brenden White on his own recognizance and request new dates for initial hearings in all

the cases so that he could first confirm the potential misidentification.  [Filing No. 90-1 at 3.]

When Deputy Prosecutor Steele compared booking photographs of Brenden White and Mark

White, he asked his investigator to contact the police to "tender updated Probable Cause Affidavits

in light of the identification of Mark White as the perpetrator."  [Filing No. 90-1 at 3.]  Even after

the police did not provide updated Probable Cause Affidavits, Deputy Prosecutor Steele still moved to dismiss the Third Criminal Case.  [Filing No. 90-1 at 3.]

Brenden White makes much of alleged delays.  Chief Deputy Defender Harmeyer's Declaration notes that Deputy Prosecutor Steele did not respond to her email regarding filing new cases against Mark White.  [Filing No. 94-1 at 2-3.]  But that does not mean that Deputy Prosecutor Steele did not properly evaluate Brenden White's cases.  Deputy Prosecutor Steele notes in his Declaration that shortly after learning from Chief Deputy Defender Harmeyer about the potential misidentification, he informed Prosecutor Mull and continued to evaluate information.  [Filing No. 90-1 at 3-4.]  Brenden White notes the delay between Deputy Prosecutor Steele's receipt of booking photos and moving to dismiss his cases.  [Filing No. 95 at 6.]  Yet there were at least five criminal cases naming Brenden White during this time, some in Clark County and some in Hendricks County.  The photos Deputy Prosecutor Steele received from Chief Deputy Defender Harmeyer were from bookings in Clark County.  [Filing No. 94-1 at 4.]  After reviewing book-in photos from both Clark County and Hendricks County, Deputy Prosecutor Steele confirmed the misidentification.  [Filing No. 90-1 at 3.]  Brenden White cites no analogous caselaw showing it was clearly established that the State Defendants could not undertake efforts to independently verify the misidentification.

  b. Prosecutor Mull

"[A]n individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Moore v. State of Ind.*, 999 F.2d 1125, 1129 (7th Cir. 1993) (citation omitted).  Supervisory liability requires more than negligence, and more than even gross negligence; it requires knowledge or deliberate, reckless indifference.  *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988).  That means "[t]he supervisors must know about

22

the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id.*

It was not clearly established – and Brenden White cites no closely analogous case – that Prosecutor Mull's actions amounted to the knowledge or deliberate, reckless indifference necessary for him to be held individually liable. On the contrary, according to Deputy Prosecutor Steele's Declaration, Prosecutor Mull never "instruct[ed] or encourage[d]" Deputy Prosecutor Steele "to continue prosecuting the case despite a lack of probable cause." [Filing No. 90-1 at 4.] Likewise, even if the Court considers Prosecutor Mull's policy of limiting discretion, he made an exception to the policy when he gave Deputy Prosecutor Steele discretion to "do what [he] believed best in prosecuting the case." [Filing No. 90-1 at 4.] Deputy Prosecutor Steele stated in his Declaration that "it has always been Prosecutor Mull's expectation that cases not be prosecuted unless the charges are supported by the evidence." [Filing No. 90-1 at 4.]

In sum, Brenden White's federal claim fails because the State Defendants are entitled to prosecutorial immunity and qualified immunity. The Court **GRANTS** the State Defendants' Motion for Summary Judgment as it relates to Brenden White's § 1983 Fourth Amendment claim.

### B.  State Law Claims

#### 1.  *Jurisdiction*

Because the Court has granted Defendants' Motion for Summary Judgment on Brenden White's federal claim, it must determine whether it will exercise jurisdiction over his state law claims. A district court has discretion whether to exercise supplemental jurisdiction over a plaintiff's state law claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim...if...the district court has dismissed all claims over which it has original jurisdiction.").

23

When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quotations and citations omitted).

The Court finds that the balance of factors weighs in favor of exercising supplemental jurisdiction over the remaining state law claims. First, as to judicial economy, the parties have already engaged in significant discovery and summary judgment briefing. Second, as far as convenience, witnesses and evidence related to the state law claims are located in counties within the Southern District of Indiana. And third and fourth, the Court is perfectly capable of applying Indiana law, and finds that neither party would be prejudiced by its doing so, making those factors weigh in favor of this Court exercising supplemental jurisdiction over the state law claims. The Court goes on to consider the parties' arguments regarding Brenden White's state law claims.

### 2. *Prosecutorial Immunity*

In support of their Motion for Summary Judgment, the State Defendants argue that under Indiana common law and the Indiana Tort Claims Act, they are entitled to absolute immunity because they acted within the scope of their authority as prosecutors. [Filing No. 91 at 10-11.] They note that after Chief Deputy Defender Harmeyer "informed [Deputy Prosecutor] Steele about the possible misidentification, [Deputy Prosecutor] Steele asked his investigator to investigate the matter," and Deputy Prosecutor Steele agreed to multiples continuances of the criminal cases during that investigation. [Filing No. 91 at 11.] They also point out that "[o]nce [Deputy Prosecutor] Steele received booking photographs and BMV information and was able to confirm the misidentification, he dismissed the criminal cases." [Filing No. 91 at 11.] All of these actions,

24

the State Defendants argue, "fall squarely within the general scope of their authority as prosecutors, and they are entitled to absolute prosecutorial immunity." [Filing No. 91 at 11.]

In response, Brenden White argues that the State Defendants are not entitled to absolute immunity because the State Defendants' actions were "malicious" and "willful and wanton." [Filing No. 95 at 16-17.] Specifically, Brenden White argues that the State Defendants "had access to information as early as March 12, 2020, that Mark Anthony White was posing as" Brenden White. [Filing No. 95 at 17.] Further, Brenden White argues, "Mark Anthony White's attorney, [Chief Deputy Defender] Harmeyer, informed [Deputy Prosecutor] Steele of the misidentification and continued to follow-up with [Deputy Prosecutor] Steele in attempts to correct the mistake made by Defendants in filing charges against" Brenden White. [Filing No. 95 at 17.] He asserts that "despite being aware of the misidentification issue," Prosecutor Mull "took no action to resolve the matter other than to advise" Deputy Prosecutor Steele to "keep him posted on any developments" and "do what [Deputy Prosecutor Steele] believed best in prosecuting the case." [Filing No. 95 at 17-18 (quotations omitted).] In light of this information, Brenden White argues, "[t]he Defendants should have known that continuing with the prosecution of a factually innocent individual such as [Brenden White] would cause him harm and could result in his incarceration, yet disregarded that danger until [Brenden White] served them notice of his intent to seek legal recourse." [Filing No. 95 at 17.] Consequently, Brenden White argues, the State Defendants' actions were not "'reasonably within the general scope of authority' granted to prosecuting attorneys in the State of Indiana," so they are not entitled to absolute immunity. [Filing No. 95 at 18 (emphasis and citation omitted).]

In reply, the State Defendants argue that they "were actively serving and engaging in their duties as prosecutors when making decisions regarding the investigation of the misidentification

and the continued prosecution of" Brenden White.  [Filing No. 96 at 5.]  This, the State Defendants argue, is the kind of conduct entitled to immunity under Indiana law.  [Filing No. 96 at 4-5]

    a.   Immunity for Conduct Within Prosecutor's Scope of Authority

"Indiana law is more generous to the prosecutor" than federal law "as long as the prosecutor is acting within the scope of his or her authority." *Davis v. Zikelbach*, 149 F.3d 614, 618 (7th Cir. 1998).  As the Indiana Supreme Court has explained, "when the acts of a prosecuting attorney 'are reasonably within the general scope of authority granted to prosecuting attorneys no liability . . . will attach'" under either the common law or the Indiana Tort Claims Act. *Hupp v. Hill*, 576 N.E.2d 1320, 1325 (Ind. Ct. App. 1991) (citing *Foster v. Pearcy*, 387 N.E.2d 446, 449 (Ind. 1979)).  For purposes of immunity under Indiana law, a prosecutor's scope of authority sweeps broadly.  *See Clifford v. Marion County Prosecuting Attorney*, 654 N.E.2d 805, 809-10 (Ind. Ct. App. 1995).

Consequently, for the same reasons the Court has found immunity for the federal claim, so too does the Court find the State Defendants acted within their scope of authority as prosecutors for the state claims.  Because the State Defendants acted within their scope of authority as prosecutors, they are entitled to absolute immunity to Brenden White's state claims of false imprisonment and malicious prosecution.  *Clifford*, 654 N.E.2d at 807-10 (affirming grant of motion to dismiss in favor of prosecutor based on immunity grounds where prosecutor filed child support order because decision to do so was within scope of prosecutorial authority); *Hupp*, 576 N.E.2d at 1325-26 (affirming grant of summary judgment in favor of prosecutor based on immunity grounds where prosecutor requested warrant because decision to request warrant was within scope of prosecutorial authority).

b.   Willful-and-Wanton Misconduct Exception

Brenden White argues that neither prosecutorial immunity nor the Indiana Tort Claims Act

protects the State Defendants because they acted maliciously, willfully, and wantonly.  [Filing No.

95 at 16-20.]   But prosecutorial immunity turns on whether the act was within the scope of

authority, not culpability:

> "Authority" in this context cannot be defined simply as the power to do an act so long as
> the activity is correctly or properly done.  The allegedly tortious act may be wrongful
> because it was negligently done, done at an inappropriate time, or done for the wrong
> reason.  Therefore, the proper focus when considering whether a prosecutor was acting
> "within [his] authority" for purposes of tort claims immunity is not upon the propriety or
> impropriety of the act in a particular context, but rather upon the nature of the activity itself.
> If it is an activity in which a prosecutor may engage, i.e., within the prosecutor's general
> scope of authority, the activity is "authorized" within the meaning of the Tort Claims Act,
> regardless of whether it was done negligently or done with improper motives.

*Clifford*, 654 N.E.2d at 810.   Consequently, it is possible for a prosecutor to act within the scope

of his authority even if his allegedly tortious conduct was malicious, willful and wanton, and

potentially even criminal. *Id.* at 808 (malicious); *Hupp*, 576 N.E.2d at 1323, 1325-26 (willful and

wanton); *Bushong v. Williamson*, 790 N.E.2d 467, 472-73 (Ind. 2003) (criminal).

As for immunity under the Indiana Tort Claims Act, Brenden White argues that the State

Defendants can be held liable for willful and wanton misconduct.   [Filing No. 95 at 16-17.]

"Willful or wanton misconduct" includes "an omission or failure to act when the actor has actual

knowledge of the natural and probable consequence of injury and his opportunity to avoid the

risk." *Howard County Sheriff's Dep't & Howard County 911 Communications v. Duke*, 172 N.E.3d

1265, 1271 (Ind. Ct. App. 2021) [hereinafter *911 Communications*] (citing *Ellis v. City of*

*Martinsville*, 940 N.E.2d 1197, 1204-05 (Ind. Ct. App. 2011)).   "Whether a party has acted or failed

to act, willful and wanton misconduct has two elements 1) the defendant must have knowledge of

an impending danger or consciousness of a course of misconduct calculated to result in probable

injury; and 2) the actor's conduct must have exhibited an indifference to the consequences of his own conduct." *Id.* (quotations and citations omitted).

Even if the Court assumes that the State Defendants knew of the "impending danger" that was Brenden White's arrest, they did not "exhibit an indifference to the consequences" of their "failure to act" for the same reasons they did not violate clearly established law under the Fourth Amendment.  Deputy Prosecutor Steele used his discretion to agree to continuances, waited for the investigation into the misidentification to be completed, and dismissed Brenden White's cases when he received confirmation of the misidentification.  Notably, he was not present or involved when the failure to appear warrant for Brenden White was issued.  An unfortunate absence does not amount to willful or wanton misconduct.

Likewise, even if Prosecutor Mull did maintain a policy of requiring approval to dismiss cases, for Brenden White's case(s), Prosecutor Mull gave Deputy Prosecutor Steele discretion.  He never "instruct[ed] or encourage[d]" Deputy Prosecutor Steele "to continue prosecuting the case despite a lack of probable cause." [Filing No. 90-1 at 4.]  "Instead, it has always been Prosecutor Mull's expectation that cases not be prosecuted unless the charges are supported by the evidence." [Filing No. 90-1 at 4.]  Prosecutor Mull simply asked that Deputy Prosecutor Steele keep him posted on any developments and do what Deputy Prosecutor Steele believed best in prosecuting the case.  [Filing No. 90-1 at 4.]  Even if an exception for willful and wanton misconduct applies to some cases, it does not apply to the circumstances of this case.  The State Defendants are immune to Brenden White's state claims for malicious prosecution and false imprisonment.

In sum, the Court, in its discretion, exercises jurisdiction over Brenden White's state law claims and finds that the State Defendants are entitled to prosecutorial immunity as to those claims.

Accordingly, the State Defendants' Motion for Summary Judgment is **GRANTED** as to Brenden White's state law claims.

## IV.
### CONCLUSION

Unfortunately, Brenden White was arrested and prosecuted for offenses he did not commit, but his arrest and prosecution resulted from a chain of events which was set in motion by the misstatements of his brother, Mark White.  Further, the State Defendants' actions related to that chain of events were within the scope of their prosecutorial duties and also did not violate any clearly established law.  For the foregoing reasons, the Court **GRANTS** the State Defendants' Motion for Summary Judgment.  [90.]  Final judgment will enter accordingly.

Date: 9/15/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Brandyn Lee Arnold
INDIANA ATTORNEY GENERAL
brandyn.arnold@atg.in.gov

Michaelia S. Gilbert
Law Office of Michaelia S. Gilbert, LLC
michaelia@msgilbertlawllc.com

William A. Gray
ATTORNEY AT LAW
williamgray@williamgraylaw.com

Gustavo Angel Jimenez
INDIANA ATTORNEY GENERAL
gustavo.jimenez@atg.in.gov

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com

Patrick Muldoon
BARNES MALONEY PLLC
pmuldoon@sbmkylaw.com

Justin M. Schaefer
BARNES MALONEY PLLC
jschaefer@sbmkylaw.com